[Docket No. 9]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| LETITIA DAVIS,<br><br>  Plaintiff,<br><br>  v.<br><br>ALLY FINANCIAL INC.,<br><br>  Defendant. | Civil No. 23-22897 (RMB-MJS)<br><br>**OPINION** |

**APPEARANCES**

Letitia Davis
590 Lower Landing Road
Unit 270
Blackwood, NJ 08012

　*Pro se Plaintiff*

Stephen J. Steinlight
Troutman Pepper Hamilton Sanders LLP
875 Third Avenue
New York, NY 10022

　*Attorney for Defendant Ally Financial Inc.*

**RENÉE MARIE BUMB, Chief United States District Judge**

This matter comes before the Court upon a Motion to Dismiss or, in the Alternative, to Compel Arbitration (the "**Motion**") filed by Defendant Ally Financial Inc. ("**Defendant**" or "**Ally**"). [Docket No. 9; Docket No. 9-1.] *Pro se* Plaintiff Letitia Davis ("**Plaintiff**" or "**Davis**") has opposed. [Docket No. 10 ("**Pl.'s Br.**").] Ally

submitted a reply brief in further support of its Motion. [Docket No. 14 ("**Def.'s Reply**").] Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b), the Court did not hear oral argument. For the reasons set forth below, the Court will **COMPEL ARBITRATION** of Plaintiff's claims.

I.   FACTUAL AND PROCEDURAL BACKGROUND

Ms. Davis filed this action in the Superior Court of New Jersey, Camden County, Law Division, Small Claims Section. [*See* Docket No. 1-1 ("**Compl**.").] She alleges that Ally violated state and federal law[1] by furnishing, without her consent, Plaintiff's non-public personal information ("**NPPI**") to the three major consumer reporting agencies: TransUnion, Equifax, and Experian ("**CRAs**"). [*Id*. at 2.] She alleges that Ally's furnishing of NPPI to the CRAs caused damage to her creditworthiness and financial reputation. [*Id*.]

The information Ally allegedly furnished to the CRAs seems to be related to past due payments related to an automobile financing agreement between Ms. Davis and Ally. Attached to the Complaint is a document titled "Retail Installment Sale Contract Simple Finance Charge" (the "**RIC**"). [Docket No. 1-1, Ex. A at 1; *see also* Docket No. 1-1, Ex. B at 1.] The RIC states that Ms. Davis bought a Ram truck from a dealership for $67,230.25, with a financed amount of $50,728.45, to be paid in

---

[1] It appears that Plaintiff is asserting claims, at least in part, under the Fair Credit Reporting Act ("**FCRA**") which regulates the collection, dissemination, and use of consumer information by consumer reporting agencies. 15 U.S.C. § 1681 *et seq.*

2

monthly installments of $863.07 per month. [RIC at 1.] The dealership assigned the RIC to Ally. [RIC at 2.] Both Ally and Ms. Davis signed the RIC. [*Id.*]

> The RIC contains an arbitration clause which provides, in relevant part:
>
> AGREEMENT TO ARBITRATE ALL CLAIMS. READ THE FOLLOWING ARBITRATION PROVISION CAREFULLY, IT LIMITS YOUR RIGHTS, AND WAIVES THE RIGHT TO MAINTAIN A COURT ACTION, OR TO PURSUE A CLASS ACTION IN COURT AND IN ARBITRATION.
>
> The parties to this agreement agree to arbitrate all claims, disputes, or controversies, including all statutory claims and any state or federal claims ("claims"), that may arise out of or relating to this agreement and the sale or lease identified in this agreement. By agreeing to arbitrate, the parties understand and agree that they are giving up their rights to use other available resolution processes, such as a court action or administrative proceeding, to resolve their disputes. Further, the parties understand that they may not pursue any claim, even in arbitration, on behalf of a class or to consolidate their claim with those of other persons or entities. Consumer Fraud, Used Car Lemon Law, and Truth-in-Lending claims are just three examples of the various types of statutory claims subject to arbitration under this agreement.
>
> …
>
> THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT. THIS ARBITRATION PROVISION LIMITS YOUR RIGHTS AND WAIVES THE RIGHT TO MAINTAIN A COURT ACTION OR PURSUE A CLASS ACTION IN COURT OR IN ARBITRATION. PLEASE READ IT CAREFULLY PRIOR TO SIGNING.

[*Id.* at 5.] Ally and Ms. Davis signed directly underneath the arbitration clause.

Ally removed the action to this Court based on the federal claim asserted in the Complaint and made a demand for arbitration on Plaintiff which she refused. [*See* Docket No. 1; Docket No. 10, Ex. A.] Defendant filed this Motion, Plaintiff opposed, and Ally submitted a reply in further support of its Motion.

3

## II.  LEGAL STANDARD

The Federal Arbitration Act (the "**FAA**") "reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009). A court is required to order the parties to proceed with arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. By contrast, "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that [s]he do so." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999). The "presumption in favor of arbitration 'does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'" *Kirleis*, 560 F.3d at 160 (quoting *Fleetwood Enters. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)). "The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

"[W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule

4

12(b)(6) standard without discovery's delay." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal citations and quotations omitted).[2] The Court will assess Ally's Motion under Rule 12(b)(6) because the RIC is attached as an exhibit to the Complaint.[3] The Court considers no other documents in resolving this Motion other than the Complaint and its exhibits. *Affordable Dentures-Audubon, Michelle Aitken, DDS, P.A. v. Affordable Care, LLC*, 2018 WL 2134037, at *7 (D.N.J. May 9, 2018) (considering only pleading and exhibits in deciding motion to compel arbitration); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").

---

[2] When arbitrability is not apparent on the face of the complaint, then further development of the factual record is necessary, and the motion should be decided under a summary judgment standard. *Guidotti*, 716 F.3d at 774.

[3] Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The party seeking dismissal of the complaint must show it fails to state a claim. *Lesher v. Zimmerman*, 822 F. App'x 116, 119 (3d Cir. 2020). When reviewing a motion to dismiss, courts must accept the complaint's factual allegations as true and afford the plaintiff "every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). Courts will dismiss a complaint if the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor will courts accept "legal conclusions" as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Malleus*, 641 F.3d at 563.

### III. DISCUSSION

The Court will compel arbitration. The FAA embodies a liberal federal policy favoring arbitration and "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). For a court to compel arbitration under the FAA, it must find that "(1) there is an agreement to arbitrate; and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009).

Here, the RIC conspicuously contains an agreement to arbitrate. The arbitration clause clearly warns in bold letters that it limits the parties' right to maintain a court action and that by "agreeing to arbitrate," the parties "understand and agree that they are giving up their rights to use other available resolution processes … to resolve their disputes." [RIC at 6.] Both Ally and Ms. Davis signed directly under the arbitration clause indicating that they agreed to its terms. The Court finds that the parties agreed to arbitrate, and that the arbitration clause is written in plain language that would be clear and understandable to the average consumer. *See Harris v. Credit Acceptance Corp.*, 2022 WL 475618, at *7 (D.N.J. Feb. 16, 2022), *aff'd*, 2022 WL 4533854 (3d Cir. Sept. 28, 2022), *cert. denied*, 143 S. Ct. 2471 (2023) (finding valid arbitration clause within a vehicle installment sale contract).

This dispute also plainly falls within the scope of the arbitration clause, which broadly covers "all" claims (including state and federal claims) between Ms. Davis and Ally. *See Harris*, 2022 WL 475618, at *7 (the presumption of arbitrability is

6

"particularly applicable where the clause is ... broad") (quoting *AT&T Techs., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 650 (1986)). Here, Plaintiff appears to be asserting claims under the FCRA, a federal statute, as well as certain unnamed state laws. [*See* Compl. at 2.] Accordingly, her lawsuit appears clearly covered by the RIC's broad arbitration clause. *Jacobowitz v. Experian Info. Sols., Inc.*, 2021 WL 651160, at *4 (D.N.J. Feb. 19, 2021) (compelling arbitration of FCRA claim and finding that compelling arbitration of that claim would not be unconscionable).

 Ms. Davis offers two arguments in opposition. First, she explains that when Ally made its demand for arbitration upon her, it sent her a version of the RIC containing an arbitration clause with different terms than the version attached to the Complaint. [Pl.'s Br. at 2; *compare also* Docket No. 10, Ex. A, *with* Docket No. 1-1, Ex. B.] She argues that compelling arbitration based on an alternate version of the arbitration clause would be prejudicial. [Pl.'s Br. at 2.] Ally concedes that the version of the RIC it sent to Ms. Davis in making its arbitration demand contains an arbitration clause with different terms than the version attached to the Complaint. [Def.'s Reply at 1–2.] It offers no explanation for the two different versions of the clause. That is somewhat concerning. Consumers have little choice in agreeing to form contracts with arbitration provisions due to their market pervasiveness and the "critical role [financial] products and services play in consumers' daily lives." 88 Fed. Reg. 6906, 6907 (Feb. 1, 2023); *see also* National Association of Consumer Advocates, *Petition for Rulemaking: To Require Meaningful Consumer Consent Regarding the Use of Arbitration to Resolve Disputes Involving Financial Products and Services* (Sept. 14, 2023),

https://www.regulations.gov/document/CFPB-2023-0047-0001. The least a financial institution can do, it seems, is to make its arbitration demand upon a consumer based on a version of the agreement that the plaintiff herself relies upon. Defendant shall take heed.

In any case, Ms. Davis's claim that she will suffer prejudice if the Court relies on the alternate version of the arbitration clause is of no moment. As the Court has explained, it has only considered the version of the arbitration clause Plaintiff attached as an exhibit to her own pleading. *See supra* at 5. But even if the Court did consider the alternate version of the arbitration clause, the result would be the same. It appears that Ms. Davis also executed the alternate version of the RIC that Ally sent to Ms. Davis in making its arbitration demand. [See Docket No. 10, Ex. A at 5–6.] The alternate version of the agreement is similarly broad with respect to Ally's (or Plaintiff's) right to elect to arbitrate for "[a]ny claim or dispute … arisi[ng] out of [the RIC]." [i. at 5.] Ms. Davis's electronic signature appears directly under the arbitration clause of the alternate version of the RIC. [*Id.* at 6.]

Second, Ms. Davis—now apparently liking some of the language contained in the alternate version of the RIC's arbitration clause—argues that the alternate version of the arbitration clause expressly permits litigation in small claims court (where she initially filed this action) without arbitration. [Pl.'s Br. at 2.] She points to language in the arbitration clause of the alternate version of the RIC which states that:

> EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.

8

> …
>
> You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court.

[Docket No. 10, Ex. A at 5.]

This language does not appear in the version of the RIC attached to Plaintiff's pleading, so, again, it is of no relevance to the Court which will only consider the Complaint and its exhibits in resolving this Motion. *See supra* at 5. In any case, the very language Ms. Davis cites explicitly states that she and Ally retained the right to seek remedies in small claims court for any disputes "***unless*** such action is transferred, ***removed*** or appealed to a different court." [*Id*. (emphasis added).] In other words, any right by either party to seek remedies in small claims court extinguished upon Ally's removal of the action from small claims court to this Court.

In short, the RIC requires arbitration of Plaintiff's claims. The Court will dismiss the action without prejudice.[4]

---

[4] The Court dismisses rather than stays this case because neither party made a request for a stay pending arbitration. *Smith v. Spizzirri*, 601 U.S. ----, --- S. Ct. ----, 2024 WL 2193872, at *2 (2024) (holding that § 3 of the FAA only requires a district court to issue a stay pending arbitration where the lawsuit involves an arbitrable dispute and a party has requested a stay pending arbitration); *Singh v. Uber Technologies Inc.*, 235 F. Supp. 3d 656, 676 (D.N.J. 2017) (quoting *Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004)) ("The Third Circuit has held that the plain language of § 3 of the FAA 'affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration.' Because neither party requests a stay of the proceedings, the Court dismisses the case in favor of arbitration.")).

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration is **GRANTED**. The parties shall submit this dispute to binding arbitration pursuant to the RIC's arbitration clause. An accompanying Order shall issue.

<u>**May 17, 2024**</u>　　　　　　　　　　　　　　<u>s/Renée Marie Bumb</u>
Date　　　　　　　　　　　　　　　　　　　　RENÉE MARIE BUMB
　　　　　　　　　　　　　　　　　　　　　　Chief United States District Judge